## PennDOT v. Johnson

*Matthew X. Haeckler, assistant counsel,* for PennDOT.
*R. Mark Thomas,* for defendant.

DOWLING, *J.,* May 25, 1993—

*A driver's license in our country is akin to a passport in a foreign land.*

This is an appeal of three notices of suspension mailed by the department to Ronald Eugene Johnson suspending his operating privileges in the Commonwealth of Pennsylvania for period of 90 days, one year, and two years, said suspensions to be served consecutively.

On July 1, 1992, Johnson pled guilty to three counts of possession with intent to deliver a controlled substance in violation of section 13(a)(30) of the Drug Act. The Clerk of Courts subsequently certified the three convictions to the department as required by 35 P.S. §780-113(m). By notice dated and mailed August 3, 1992, Mr. Johnson was told that his operating privileges were being suspended for 90 days as mandated by the Drug Act for his conviction on July 1, 1992, of violating section 13(a)(30) of the Drug Act. By

notices dated and mailed August 5, 1992, the department advised him that his operating privileges were scheduled to be suspended for periods of one year and two years as the result of his other convictions on July 1, 1992. Johnson filed an appeal nunc pro tunc on December 17, 1992.

A hearing was held on February 5, 1993, at which time the department presented its certified records showing that the department had sent the notices of suspension at the address of 264 Boas Street, Harrisburg, Pennsylvania 17102. Two notices were sent on August 5, 1992, and one notice was sent on August 3, 1992. *The conviction report submitted by the department indicated an address of 2946 Wilson Parkway, Harrisburg, Pa.,* where, in fact, the motorist resided. Johnson testified that he had moved from the 264 Boas Street address and did not receive the notices mailed by the department. He conceded that the address on his driver's license was the Boas Street address.

At the conclusion of the hearing, we found that the motorist had not received the notices of suspension, in that the department knew of the motorist's change of address because *the Wilson Parkway address was the address on the DL-21 D forms, the forms supplied by the Department to Clerk of Courts for the reporting of convictions of the Drug Act.*

On April 8, 1993, a hearing was held on the merits. The department's certified record, which was identified as Commonwealth exhibit no. 1, contained the records of convictions for violations of section 13(a)(30) of the Drug Act. Johnson and the Commonwealth stipulated that he was not informed that his license would be suspended when he pled guilty to the drug violations.

The Commonwealth argues for a spiritless, letter-strict interpretation of the statute contrary to common sense

and justice. While we certainly have no tolerance for drug offenders, they are nevertheless entitled to due process. In this connection, cognizance should be taken of the dire consequences which result from a prolonged loss of a driver's license. It is an absolute necessity. Its absence is similar to the status of fatherless children in Victorian England or to that of a soldier in the front line without a weapon or ammunition. It's Lee at Gettysburg without Jackson. We should also note that rehabilitation of any drug offender must begin with an opportunity for employment. A man facing over three years without a license is severely handicapped in securing any type of job.

Before making a decision on the substantive issue of whether the Commonwealth properly suspended Johnson's operating privileges, we must first dispose of the state's contention that we erred in allowing an appeal nunc pro tunc. The department relies on *Korell v. Dept. of Transportation, Bureau of Driver Licensing,* 122 Pa. Commw. 86, 551 A.2d 398 (1989) and *McKeown v. Dept. of Transportation,* 144 Pa. Commw. 322, 601 A.2d 486 (1991). In *Korell,* the contention was that the bureau was aware of his correct address because he had used this when he applied for registration of his motor vehicle and that PennDOT has sent renewals of his registration to his new address. The court stated, however, that there was nothing in the record to support his contention that the motor vehicle registration renewals were mailed to his new address. It should also be noted that in that case the Bureau of Driver Licensing mailed the appellant 10 suspension/revocation notices. In *McKeown,* the argument was that the motorist had been incarcerated and that the appeal period had expired before he received actual notice of his revocation. We think these cases are distinguishable in that here *the*

*very basis of the suspension, i.e., the conviction record submitted by the Department of Transportation, showed the correct address of 2946 Wilson Parkway, Harrisburg.* Yet, the notice of suspension was mailed to his former address of 264 Boas Street, Harrisburg.

PennDOT's position on the merits is simply that a motorist may not attack the validity of a conviction in collateral civil license suspension proceedings. This is generally correct. However, in *Duffey v. Dept. of Transportation, Bureau of Driver Licensing,* 147 Pa. Commw. 280, 607 A.2d 815 (1992), the Commonwealth Court concluded, after considerable discussion, that a license suspension under section 6310.4 of the Crimes Code (underage drinking) is not properly characterized as a collateral civil consequence of a criminal conviction, but rather as part of the sentence. The bureau attempts to distinguish this case by arguing that here the conviction was under section 780.113(m) of the Drug Act (35 P.S. §780.113(m)) which directs the Clerk of Courts after judgment of conviction to send the Department of Transportation a record of the conviction. We think this is a distinction without a difference. Both a conviction for underage drinking and a conviction for a drug offense require that as part of the sentence there be a period of license suspension. It seems to be inconsequential whether the court directly orders this or it is done pursuant to the statute by the Clerk of Courts.

This very problem was addressed in an excellent opinion by the Honorable Kevin A. Hess of our sister county, Cumberland. In *Nickey v. Department of Transportation,* 42 Cumberland L.J. 189 (1992), the petitioner appealed from his suspension following a number of violations of the Controlled Substance, Drug, Device and Cosmetic Act, his suspension being pursuant to 35 P.S.

§780.113(m). As in the instant case, the motorist had not been informed at the time he entered his plea that he would face a license suspension. We quote from Judge Hess' opinion:

"There is, of course, in 35 P.S. §780-113(m) no provision directing suspension of the defendant's license by court order. Rather, the Clerk of Courts, within 10 days after final judgment of conviction, sends to the Department of Transportation a record of the conviction on a form provided by the Department of Transportation. PennDOT argues that, because it is a notice of a record of a drug conviction which triggers the suspension rather than an order of court, *Duffey* has no application to this case. Thus, according to PennDOT, we are bound to follow the general rule that a license suspension is a collateral civil consequence and that there is no requirement that the defendant be informed of this plea.

"We note, however, that in the cases cited by PennDOT, none of the guilty pleas were to offenses other than Vehicle Code violations. Suspensions for Vehicle Code violations are, of course, generally triggered when notice of conviction is forwarded to DOT by agents of the court or minor judiciary. The Department of Transportation contends, in the instant case, that because the same notice procedure is followed in drug cases as in Motor Vehicle Code cases, the suspension of the violator's license is a civil collateral consequence and not a penalty imposed by the court. This contention misses the fundamental point made in *Duffey.*

"At the heart of the decision in the *Duffey* case, we believe, is the court's appreciation of the imposition of a license suspension where the underlying offense is for

a violation of the law other than the Vehicle Code. Citing from the Legislative Journal of the House of Representatives, the *Duffey* court concluded that the House debate indicated that the legislature intended to mandate 'a license suspension as the direct penalty for certain alcohol-related offenses, regardless of whether a vehicle was involved.' *Duffey, supra.* The intention of the legislature to mandate license suspension as a direct penalty is equally clear in this case where the suspension results from certain drug-related offenses, which do require, as an element, the operation of a motor vehicle.

"We are dealing with a case where the potential suspensions of the petitioner's driver's license will exceed seven years. As we have already noted, this suspension results from violations of the drug law having nothing to do with the defendant's operation of a motor vehicle. With the exception that the suspension of the driver's license for underage drinking takes the form of 'order' on a PennDOT form and in the case of a violation of a drug law a 'record of the conviction' on a PennDOT form, we see no reason why the basic principles in *Duffey* should not apply equally to drug cases as to underage drinking cases." See also, *Miller v. Commonwealth, Dept. of Transportation,* opinion by Judge Wesley Oler, Jr., no. 197 Civ. 1992, (Cumberland, Mar. 15, 1993).

Accordingly, we enter the following

### ORDER

And now, May 25, 1993, upon consideration of appellant's petition for appeal and following a hearing, the appeal is sustained, and the orders suspending appellant's operating privileges are reversed.